No. 9098.

SAN LUIS RAIROAD COMPANY *v.* SIMS, ET AL.

1. CONTRACT—*Defenses.* Plaintiff and defendants on the 25th of January, A. D. 1913, entered into an agreement that plaintiff should construct a railroad from its works at Monte Vista to the Town of Center, and defendant should secure conveyances. to a trustee named of the right-of-way for such railroad, and should deposit at dates named, moneys amounting to $25,000, all to be applied by the plaintiff to the construction of the proposed railroad. Though plaintiff had constructed the railroad, according to the provisions of the agreement, defendants had failed to secure conveyance for a very considerable part of the way, and had failed and refused to make the deposit of over $11,000.00 of the moneys stipulated to be provided by them. Plaintiff demanded judgment for money expended by it in securing, by condemnation, the rights of way required, as well as the moneys in which defendants had made default. Defendant was permitted to put in evidence an agreement between a corporation organized by a portion of the defendants, and other citizens, of one part, and the plaintiff of the other, after the execution of the contract of January 25th, A. D. 1913, providing that the plaintiff should organize under the laws of Colorado, by a day named, as a common carrier, a railway company, which should construct a railway over a right-of-way to be secured by the other parties to this agreement; providing also that for the location of the road to the Town of Center, and that the terminal should be at such place, in that town, as the second party should designate. And defendants contended that plaintiff had failed to comply with the provisions of the latter contract as to the location of the road through the Town of Center. *Held* that the latter contract, being between different parties than the agreement relied upon by plaintiff, and relating to different matters, was wholly ineffectual to relieve defendants from their obligations under the former and the admission thereof, and the defenses set up thereunder, was error.

2. *Construed.* No right-of-way through the Town of Center having been secured, but one along the side of the town limits, *held* that construction upon this line was a compliance with plaintiff's contract.

3. EVIDENCE—*Competency.* Defendants were relying upon a certain contract between plaintiff, and a corporation known as the Center Products Company, organized by citizens of the Town of Center. *Held* that conversations and occurrences at a public meeting, held at the Town of Center, before the organization of the Products Company, was inadmissible.

*Error to Rio Grande District Court, Hon. Jesse C. Wiley, Judge.*

Mr. LEROY J. WILLIAMS, Mr. WILLIAM V. HODGES, Mr. RICHARD B. SCANDRETT, JR., Mr. R. R. MITCHELL, Mr. HAROLD H. HEALY, for plaintiff in error.

Mr. CHARLES M. CORLETT, Mr. JESSE STEPHENSON, Mr. JAMES P. VEERKAMP, Mr. GEORGE M. CORLETT, for defendants in error.

Mr. Justice Scott delivered the opinion of the court.

THIS is an action by the plaintiff in error, plaintiff below, to recover the amounts alleged to be due and unpaid upon a certain contract or subscription agreement, signed by the defendants. This agreement was with The San Luis Valley Beet Sugar Company, and assigned to the plaintiff, railroad company. It was apparently the understanding at the time that the contract was to be assigned to a railroad company to be organized for that purpose.

It seems necessary to a full understanding of the matter that the contract be set out in full and as follows:

"Whereas, it is necessary for the successful operation of the plant of The San Luis Valley Beet Sugar Company, near Monte Vista, Colorado, that a line of railroad be constructed from the town of Center, Saguache county, Colorado, to the said company's plant, for the purpose of securing beet acreage and the transportation of beets; and

Whereas, It is of vital interest to the undersigned individuals, owning land along the line of the said proposed railroad, to have said railroad constructed at the earliest possible time, so as to reap the financial benefit to themselves from the increase of land values which will result therefrom and the securing of the needed transportation facilities for agricultural purposes in the year 1913, therefore,

IT IS AGREED by and between the San Luis Valley Beet Sugar Company, party of the first part or its assigns, and the undersigned individuals, jointly and severally, as parties of the second part, as follows:

That for and in consideration of the mutual benefits and promises and the covenants, terms and conditions hereinafter set forth to be kept and performed by the respective parties hereto, and in further consideration of the sum of One Dollar ($1.00) paid by each of the individuals hereto subscribing as parties of the second part to the party of the first part, the receipt of which is hereby acknowledged, the second parties agree each with the other and jointly and severally with the first party or its assigns, to deposit in a bank, either in the town of Center, Saguache county, Colorado, or in Monte Vista, Rio Grande county, Colorado, the sum of twenty-five thousand dollars ($25,000) in cash as follows: Six thousand two hundred and fifty dollars ($6,250) on or before March 1st, 1913; and Six Thousand two hundred and fifty dollars ($6,250) on or before the first day of April; Six Thousand two hundred and fifty Dollars ($6,250) on or before the first day of May, and Six Thousand two hundred and fifty dollars on or before the first day of June, and the first party or its assigns shall be notified of the bank or banks in which said deposit will be made, as aforesaid, within ten days from the date of this agreement.

IT IS AGREED that the said sums shall be deposited in the name of and to the credit of The San Luis Valley Beet Sugar Company or its assigns, and will be made as aforesaid.

It IS AGREED that the second parties will secure within ninety (90) days from this date, and deposit the same in the aforesaid bank, subject to the control and direction of the first party, or its assigns warranty deeds running to Michael Brady as trustee, for first party or its assigns, conveying good, marketable title for right of way not less than sixty feet wide, for the construction of a railroad, together with the necessary terminal ground in the town of Center, aforesaid, on the line of survey heretofore made and established, commencing at the north end of the yard track at the factory site of the first party, near Monte Vista, Rio Grande county, Colorado, and running northward to and through the corporate limits of said town of Center, in Saguache county, Colorado.

IT IS AGREED that the second party will secure contracts for the growing of sugar beets covering two thousand (2,000) acres, in the territory traversed by and being adjacent to said line of railroad and within wagon haul thereof. Said contracts being for the season of 1913, and subject to the approval of the first party or its assigns.

IT IS AGREED that the first party or its assigns will construct, or cause to be constructed and operated, a standard gauge railroad along the said route heretofore surveyed, and over the line conveyed by the warranty deeds for said right of way, hereinbefore stated, and to order materials therefor and to commence the work of construction thereof without unnecessary delay after this date, and the work of said construction shall be prosecuted without unnecessary delay to completion.

IT IS AGREED and understood that the twenty-five thousand ($25,000) dollars hereinbefore stated shall be used by the first party or its assigns solely and only in the

construction of said main line of railroad and shall only be paid out upon the report and estimate of the engineer in charge of the work.

IT IS AGREED that the first party or its assigns shall proceed hereafter, as before stated, to construct said railroad, relying and depending upon the payment of the moneys aforesaid, and that the obligation herein made of the parties of the second part is binding upon them, jointly and severally, and upon their several administrators, executors or legal representatives.

Dated this 25th day of January, 1913."

It is alleged in the complaint that the plaintiff and its assignor fully performed all the conditions required by the contract. That the defendants had paid on said agreement all of said subscriptions except the sum of $13,499.12, which said sum remained due and unpaid, and which sum the defendants refused to pay.

It was further alleged that defendants had failed to comply with their agreement in the matter of securing rights of way and which failure had caused the plaintiff to institute condemnation proceedings in some cases, and to expend the total sum of $2,740.20 in such matters, for all of which plaintiff prayed judgment with interest.

The answer of defendants admits the agreement, but declares that it was without consideration and is *ultra vires*. Further, that defendants were at all times able and willing to comply with the terms of the agreement, but that the plaintiff had failed and refused to comply with its obligations under the contract.

For a further defense the defendants set up a cross complaint alleging that they had paid on said subscription the sum of $11,500.88, and had furnished rights of way at an expense reasonably of the value of $2,607.00, and for which sums they prayed judgment.

It was further alleged for said second defense and cross complaint that:

"Notwithstanding the payment of said sums and the fact that defendants were at all times ready, willing and able to carry out provisions of said contract to be by them performed, plaintiff and its predecessor in interest delayed and refused to construct said railroad through the corporate limits of the town of Center in Saguache county, Colorado, and otherwise failed to carry out the terms of said contract."

The cause was tried to a jury and verdict returned for the defendants, but denying the claim under the cross complaint.

The railroad was fully completed and in operation at the time fixed in the subscription agreement and was so being operated at the time of the trial.

The only error seemingly relied on, and which presents the only serious argument in the briefs, is the apparent holding of the court that the railroad company failed to construct its road through the corporate limits of the town of Center, but instead did construct its line on the east side of and along the line of the corporate limits of the town.

It seems that the subscribers, defendants in this case, were chiefly located in the two towns of Monte Vista and Center, at which points the termini of the short railroad are located. Those living at Center were the only ones of the subscribers apparently interested in the particular location of the terminal at that point, and those located at Monte Vista have no apparent interest and cannot reasonably have any interest in that question.

It appears that those subscribers located at Center, with others perhaps of that locality, organized a corporation called The Center Products Association, and that this company entered into an agreement with the San Luis Valley Beet Sugar Company subsequent to the execution of the subscription agreement.

In that contract the Sugar company agreed as before to construct its railroad as provided in the subscription agreement with the defendants.

It did not relate to subscriptions toward the cost of construction of the railroad, but provided for other and entirely different matters and specifically among other things:

WITNESSETH: That for and in consideration of the efforts heretofore made by the second party in the securing of beet acreage, subscriptions and proposed right of way for a proposed railroad and for the mutual promises and covenants hereinafter to be performed by the respective parties hereto and in the further consideration of the making, signing and executing of that certain contract and agreement as of date of January 25th, 1913, between The San Luis Valley Beet Sugar Company and certain individual residents of Rio Grande and Saguache counties, Colorado, a reference to which contract and agreement is hereby made; the party of the first part hereby, has agreed and does agree as follows, to-wit:

First:   To cause to be incorporated and organized as a common carrier, and under the laws of the State of Colorado, a railroad company, and which incorporation and organization shall be perfected and in actual and lawful existence by not later than April 1st, 1913.

Second:   To give to party of the second part herein a good and sufficient bond in the sum of twenty-five thousand ($25,000) dollars and said bond to be conditioned as follows:

That said railroad company will construct a standard guage railroad, over the right of way to be secured by party of the second part herein from the town of Center, Saguache county, Colorado, to connect with the tracks in the yards of the San Luis Valley Beet Sugar Company, near Monte Vista, Rio Grande county, Colorado, and that said railroad will be constructed and in actual operation of daily trains between the above points, by not later than September 1st, 1913, provided at all times that said railroad company shall not be delayed or hampered by the neglect, refusal or nonperformance of those certain agreements and conditions to be performed by the second par-

ties herein or the second parties in and to that certain contract or agreement made and entered into the 25th day of January, 1913, and to which contract and agreement reference is hereby made.

Third: It is further provided that said second party herein shall obtain for said railroad company a franchise, from the Town Council of the Town of Center, Saguache county, Colorado, to enter, operate and maintain its railroad, terminals, switches and buildings in the Town of Center and such railroad to maintain and have its terminal at such place in the Town of Center as shall be designated and selected by said second party herein."

The remaining portion of the agreement related to freight and passenger rates and other shipping regulations.

It is plain that this contract was between different parties than those to the subscription agreement, and did not pretend to modify or change that agreement, or to in any manner relieve the defendants from any obligations under it, and if it did so intend or provide, it was wholly ineffective in that respect, for there is nothing in the record to indicate that the Center Products Corporation had any power or authority to modify the conditions or obligations of the individual defendants in the matter of their subscription agreement.

The court permitted the introduction of this last contract of the Center Products Company in evidence over the objection of the defendants. This was manifest error and the verdict and judgment should be set aside for such reason alone. They pleaded no such contract, and it could have no legitimate place in the record.

The plaintiff and defendants must stand upon the subscription agreement and cannot rely upon an agreement subsequently made between different parties.

The subscription agreement provided that the defendants, and clearly as a condition precedent to the construction of the railroad, and as to its location, should secure

within ninety days from its date, and should deliver warranty deeds running to Michael Brady as trustee, for the plaintiff, conveying rights of way, not less than sixty feet wide, for the construction of the entire road, together with the necessary terminal grounds in the town of Center, on a line of survey theretofore made and established, and about which then existing survey there is no dispute in the record, and which right of way is described in the agreement, as commencing at the north end of the yard track at the factory site of the first party near Monte Vista, and running northward to and through the corporate limits of the town of Center.

The defendants did not deliver deeds for a right of way to the railroad for all that part of the line running between the towns, but on the contrary the railroad company was compelled to and did have certain portions of it condemned and were compelled to and did expend the sums of money set out in the complaint, and the defendants did not convey to the railroad company any right of way at all through or into the corporate limits of the town of Center, as specifically agreed, all of which is made a condition precedent to the construction of the road.

But on the contrary, the Center Products Company did cause to be procured a right of way along the east side of the corporate limits of the town, and on which the railroad company constructed its line and terminals.

The court admitted certain conversations of individuals, and statements of occurrences at a public meeting held at the town of Center, prior to the organization or incorporation of the Center Products Company, all of which were incompetent and prejudicial.

All such matters must be held to have merged and culminated in the contracts signed by the parties which alone the court may consider.

The testimony clearly shows that the plaintiff has as fully complied with its agreement as the defendants by their acts and conduct permitted it to do, and there is no competent

testimony to justify a conclusion that the defendants may be relieved for any cause, from their subscription agreement.

The motion by the plaintiff for a directed verdict should have been sustained.

The judgment is reversed with instruction to the court below to enter judgment in favor of the plaintiff in the amount found to be due on the subscription agreement, with interest thereon from the dates such sums became due and payable by the terms thereof.

Judgment reversed with instructions.

Garrigues, C. J., and Denison, J. concur.

Decided May 8, A. D. 1919. Rehearing denied July 7, A. D. 1919.